UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GRETCHEN ERAN WILSON,

                Plaintiff,

    -vs-                      **No. 1:16-cv-00765-MAT**
                                  **DECISION AND ORDER**
NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.

---

## I. Introduction

Gretchen Eran Wilson ("Plaintiff"), represented by counsel, brings this action under Title II of the Social Security Act ("the Act"), seeking review of the final decision of Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner" or "Defendant"), denying her application for disability insurance benefits ("DIB"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Procedural Status

Plaintiff protectively filed for DIB on October 29, 2013, alleging disability based on clubbed feet issues, corrective right foot surgery, arthritis in her feet, bulging discs in her back, sciatic issues, gastric bypass, high blood pressure, right and left hip and knee pain, and depression. Her application was denied initially, and she requested a hearing. Administrative Law Judge Michael W. Devlin ("the ALJ") conducted hearings on January 7, 2016, and January 20, 2016, respectively, in Buffalo, New York.

One hearing was conducted to take Plaintiff's testimony; the other to take the testimony of a vocational expert ("the VE"). On April 21, 2016, the ALJ issued an unfavorable decision. T.20-29.[1] The Appeals Council denied Plaintiff's request for review on July 26, 2016, making the ALJ's decision the final decision of the Commissioner. This action followed.

Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Commissioner's decision is affirmed.

**III. The ALJ's Decision**

At step one of the five-step sequential evaluation, the ALJ that Plaintiff had not engaged in substantial gainful activity between the time of her September 2013 alleged onset date and the December 2014 expiration of her insured status. At step two, the ALJ found that Plaintiff's cervicalgia; clubbed feet; chronic pulmonary embolism; history of deep vein thrombosis in the right lower extremity; unspecified abdominal pain; chronic fatigue; and lumbar disc disease, status post-surgery in July 2014, with radiculopathy, were "severe" impairments. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or equals a listed impairment.

---

[1] Citations to "T." refer to pages in the certified administrative transcript.

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform unskilled sedentary work. Specifically, Plaintiff could frequently lift and carry less than 10 pounds and occasionally lift, carry, push, and pull 10 pounds; could sit about 6 hours and stand and walk about 2 hours in an 8-hour workday; could occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs; could never climb ladders, ropes, or scaffolds; and could look up and down and turn her head to each side frequently. She also needed to avoid concentrated exposure to fumes, odors, dust, gases, poor ventilation, and other respiratory irritants; she could understand, remember, and carry out simple instructions and tasks; and she was able to consistently maintain concentration and focus for up to two hours at a time.

At step four, the ALJ found that Plaintiff could not perform her past relevant work as a claims clerk, hospital cleaner, or receptionist. At step five, the ALJ relied on the VE's testimony to find that a person of Plaintiff's age (36 years-old) and with her education (high school diploma and some college), work experience, and RFC, could perform other work existing in significant numbers in the national economy as a callout operator, surveillance system monitor, and charge account clerk. Accordingly, the ALJ found Plaintiff not disabled.

**IV. Scope of Review**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (stating that the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**V. Discussion**

**A. Erroneous Weighing of Treating Pain Management Specialist's Opinion**

Plaintiff contends that the ALJ erred by affording significant weight to the opinion issued by her treating pain management specialist, Dr. Eugene Gosy, at her first appointment on November

6, 2013. *See* Plaintiff's Memorandum of Law ("Pl.'s Mem.") (Docket No. 14-1) at Point ("Pt.") I(A), pp. 12-14. At that time, Dr. Gosy ordered an MRI of Plaintiff's cervical spine and stated, "I advised her that she needs to avoid lifting anything greater than 10 pounds." T.228. Plaintiff argues that this was merely a precaution to prevent injury rather than an assessment of Plaintiff's lifting abilities in a work setting. Plaintiff further contends that this statement was stale, because during the 29-month interim between that appointment and the ALJ's decision, Plaintiff underwent extensive treatment including least 12 visits to Dr. Gosy, four visits to Dr. Salcedo, major back surgery in July of 2014, multiple spinal MRIs that showed significant pathologies, and multiple emergency room visits and surgery for chronic abdominal pain. Plaintiff contends that it was inappropriate for the ALJ to make his determination about Plaintiff's lifting capability "based on a stale one-time examination that was over that was 29 months old." Pl.'s Mem. at 13 (citing *Griffith v. Astrue*, No. 08-CV-6004 CJS, 2009 WL 909630, at *9 n.9 (W.D.N.Y. Mar. 31, 2009) (finding that "the State Agency Officials' reports, which are conclusory, stale, and based on an incomplete medical record, are not substantial evidence"); other citations omitted).

The Commissioner asserts that, despite Plaintiff's abdominal surgery, emergency room treatment, and spinal diagnostic imaging subsequent to Dr. Gosy's 10-pound lifting limitation, little, if

anything, about her status changed. First, with regard to her surgical procedure in September 2014, to repair a hernia and to address an obstructed bowel, Plaintiff recovered well from the procedure. Upon discharge from the hospital following the surgery, she was told that she should not lift more than 15 pounds. T.502. This lifting restriction is consistent with Dr. Gosy's 10-pound lifting limitation and, indeed, is less restrictive. An abdominal CT scan on December 8, 2014, was negative for any abnormal pathology; her abdomen showed no leak, obstruction, fistula, or small bowel pathology, and appropriate changes given her previous gastric bypass. T.334. Plaintiff also had no swelling or tenderness in her lower extremities, her gait was within normal limits, and she appeared calm, comfortable, and in no acute distress. Plaintiff's abdominal surgery thus did not render Dr. Gosy's 10-pound lifting limitation stale.

With regard to Plaintiff's emergency treatment, in June 2014, she presented at the hospital complaining of vomiting, pruritus, and difficulty breathing after taking a dose of Bactrim, which she had been prescribed for a urinary tract infection. T.531-35. While Plaintiff did have a severe allergic reaction (anaphylaxis) to the antibiotic, the condition was transient. Plaintiff recovered well after undergoing conservative treatment (corticosteroids). T.535. Upon discharge, she was told that she could engage in physical activity "[a]s tolerated" and had no limits placed on her ability

to lift or perform other physical activities. T.530. Again, these limitations are far less restrictive than Dr. Gosy's 10-pound lifting limitation. Plaintiff's emergency treatment for anaphylaxis likewise did not render Dr. Gosy's 10-pound lifting limitation stale.

With regard to the diagnostic imaging Plaintiff underwent after Dr. Gosy gave his lifting limitation in November 2013, the MRIs and the CT scan of her spine revealed a shallow disc herniation in her cervical region and some stenosis, narrowing, degeneration, and a protrusion in her lumbar region. Nonetheless, Plaintiff continued to have normal strength and sensation. Plaintiff reported that the Lidoderm patches and Flexeril "work[ed] quite well" at relieving her pain and spasms. T.300. In addition, Plaintiff went from having positive straight leg raise testing[2] on the left at the time of Dr. Gosy's opinion to negative straight leg raise testing on both sides of her body during the remainder of the disability period. *Compare* T.227 *with* T.286, 289, 294, 298, 306. Thus, Plaintiff's spinal diagnostic imaging conducted after Dr. Gosy's opinion regarding Plaintiff's ability to lift did not cause it to become stale.

---

[2] The "straight leg raising test," or "Lasègue's sign," is a clinical, neurodynamic test to demonstrate lumbosacral radicular irritation. Lasègue's sign is said to be positive if the angle to which the leg can be raised (upon straight leg raising) before eliciting pain is less than 45°. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5483767/. The straight leg raising test is considered to be an important physical sign of disc herniation, regardless of the degree of disc injury. https://www.physio-pedia.com/Straight_Leg_Raise_Test

Finally, the Court notes that there is other evidence in the record showing that Plaintiff can actually lift 10 pounds. For instance, at the hearing, which was held more than a year after the expiration of her insured status, Plaintiff stated that she could lift up to 10 pounds and that she did grocery-shopping and cooking. T.60, 65. She also reported that had worked as a receptionist for a year after her back had "gone out." T.38. Thus, notwithstanding her back problems, Plaintiff was able to perform the exertional requirements of sedentary work, which includes lifting up to 10 pounds.[3] While the ALJ found Plaintiff could no longer perform her past relevant work as a receptionist, that was due to the presence of certain nonexertional limitations caused by Plaintiff's *mental* impairments; it was not due to any limitations from her *physical* impairments.

**B.  Plaintiff's Second Argument: Failure to Obtain a Medical Expert Opinion Regarding Plaintiff's Ability to Sit, Stand, and Walk**

Plaintiff contends that the ALJ erred by failing to obtain a medical expert opinion regarding Plaintiff's ability to sit, stand, and walk. *See* Pl.'s Mem. at Pt. I(B), pp. 14-15. Therefore, Plaintiff argues, the RFC findings regarding these work-related functions improperly were based solely upon the ALJ's lay

---

[3] As the ALJ's decision indicates, Plaintiff's receptionist job was classified as "sedentary" work. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."
20 C.F.R. § 404.1567(a).

interpretation of the medical evidence and were unsupported by substantial evidence. *See id.*

It is well settled that an ALJ has an obligation to develop the administrative record, even when a claimant is represented by counsel. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996); *see also* see also 20 C.F.R. § 404.1512(e) ("When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision"); *id.* § 404.1527(c)(3) ("If the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled, we will try to obtain additional evidence. . . ."). By the same token, "an ALJ does not have an affirmative duty to expand the record ad infinitum. Instead, he or she must only develop it when there are gaps in the record, or when the record serves as an inadequate basis on which to render a decision." *Walker v. Astrue*, No. 11-CV-766S, 2012 WL 4473249, at *3 (W.D.N.Y. Sept. 26, 2012) (citing *Perez*, 77 F.3d at 47).

Plaintiff argues that the absence of a medical expert opinion on her ability to sit, stand, and walk created a gap requiring the ALJ to develop the record further. At the time of the ALJ's decision on April 21, 2016, "the SSA's regulations as to the need

for seeking a treating physician's opinion contain directives that may be seen as competing." *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (summary order) (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013) (summary order)). On the one hand, they provide, in language that "does not appear to be conditional or hortatory," *Tankisi*, 521 F. App'x at 33, that the Social Security Administration "*will* request a medical source statement about what you can still do despite your impairment(s)." *Id.* (quoting 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6); emphasis in *Tankisi*). This regulation "thus seems to impose on the ALJ a duty to solicit such medical opinions." *Id.* (quoting 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6)). However, the same subsection ends by noting that "'the lack of the medical source statement will not make the report incomplete.'" *Id.* (quoting 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6)). Further, the regulation provides that "'[m]edical reports *should* include . . . [a] statement about what you can still do despite your impairment,' not that they *must* include such statements." *Id.* (quoting 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6)) (emphases, ellipsis, and alteration in *Tankisi*). In both *Tankisi* and *Pellam*, the Second Circuit found that it was not *per se* error for the ALJ to make a disability determination without having sought the opinion of the claimant's treating physician. *Tankisi*, 521 F. App'x at 33-34; *Pellam*, 508 F. App'x at 90. The Second Circuit followed an "approach that focuses on circumstances

of the particular case, the comprehensiveness of the administrative record, and, at core, whether an ALJ could reach an informed decision based on the record[.]" *Sanchez v. Colvin*, No. 13 CIV. 6303 PAE, 2015 WL 736102, at *5 (S.D.N.Y. Feb. 20, 2015) (citing *Tankisi*, 521 F. App'x at 33-34).

Here, the Court finds that under the particular circumstances presented in Plaintiff's case, it was not necessary for the ALJ to obtain an RFC statement from a medical source regarding Plaintiff's ability to sit, stand, and walk because substantial evidence in the record demonstrated that Plaintiff could perform the sitting, standing, and walking requirements of sedentary work. Of note is Plaintiff's testimony at the January 2016 hearing that she had continued working for a year at a sedentary job (receptionist) even after her back had "gone out," and that it was the heavy lifting required at her most recent job in a bakery that had caused her to stop working. T.37, 50. Plaintiff also reported that her back surgeries in 2008 and 2014 had helped her leg pain. *See* T.52 (the 2008 surgery relieved the pain in the front of her right leg), T.253 (noting that following the 2014 surgery, she had "100% improvement of the pain in the lateral aspect of her thigh," but the pain in the anterior portion of the calf remained the same). Plaintiff's negative straight leg raising tests were negative bilaterally during nearly the entire relevant time period. T.286, 289, 298, 306. She reported to pain management specialist Dr. Gosy

that the medications prescribed for her "work[ed] quite well" to relieve her pain and spasms. T.300. She also admitted that her clubbed feet and lumbar pain were impairments that predated the alleged onset of disability. T.226, 294, 298. The Court finds that the record for the 16-month disability period at issue was comprehensive, internally consistent, and more than adequate for the ALJ to reach an informed decision that Plaintiff had the RFC to perform a range of sedentary work. The absence of a medical source opinion did not create an obvious gap necessitating action on the part of the ALJ. *See Wilson*, 136 F. Supp.3d at 479.

### C. Plaintiff's Third Argument: Credibility Assessment Unsupported by Substantial Evidence

Plaintiff contends that the ALJ improperly ignored her subjective complaints in the RFC assessment, noting she testified to pain and limitations which were in direct conflict with the RFC findings of the ALJ. *See* Pl.'s Mem. at Pt. II, pp. 15-19.

Where, as here, "an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms" and "must then make a finding on the credibility of the individual's statements about symptoms and their functional effects." SSR 96-7P, 1996 WL 374186, at *4(S.S.A. July 2, 1996). As Plaintiff points out, the ALJ's "decision must contain specific reasons for the finding on

credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at *2.

The ALJ determined that the limitations alleged by Plaintiff were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." T.25. Plaintiff asserts that other than this "recitation of boilerplate," the ALJ's decision "contains no cogent analysis" of her credibility. Pl.'s Mem. at 17-18. In particular, Plaintiff alleges that the ALJ erroneously ALJ failed to consider evidence other than objective medical findings. *Id.* at 18. This is not accurate, as the ALJ explicitly considered, and gave significant weight to, the opinion of treating physician Dr. Gosy, who stated in November 2013, that Plaintiff should not lift more than 10 pounds. This lifting restriction is consistent with the RFC for a range of sedentary work. Plaintiff faults the ALJ for disregarding her testimony that can only sit a half-hour at a time, stand a half-hour at one time, and walk a few blocks. T.59-60. Notably, however, Dr. Gosy did not impose any other postural or exertional restrictions on Plaintiff at any point during his treatment of her. With regard to her ability to sit, Plaintiff contradictorily testified that she spent most of her day in a

recliner. T.59, 63. With regard to Plaintiff's testimony that she can only lift between 5 and 10 pounds, that is not inconsistent with an RFC for sedentary work, which does not require lifting greater than 10 pounds. With regard to her ability to stand and walk, Plaintiff testified that she performed a variety of daily activities, including cooking, driving, and shopping for groceries, and also reported that she was primarily responsible for the care of her seven and eight-year-old children because her husband worked long hours. T.62, 64, 65. Also, as noted above, Plaintiff worked at a sedentary job even after her back had gone out. Thus, Plaintiff's own testimony about her daily activities undermines the credibility of her assertions regarding her exertional abilities. *See*, *e.g.*, *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (substantial evidence supported ALJ's finding that claimant's subjective complaints of pain were insufficient to establish disability where claimant recovered well from his left ankle injury, his orthopedist believed he could return to lighter work, claimant was able to care for his one-year-old child, including changing diapers, he sometimes vacuumed and washed dishes, he occasionally drove, and he watched television, read, and used the computer); *see also* SSR 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").

Plaintiff also asserts that the ALJ erred in concluding that her condition had improved with her microdiskectomy when it had allegedly gotten worse. Pl.'s Mem. at 18-19. However, there was substantial evidence in the record to support the ALJ's finding that her back issues did not become disabling during the relevant time period, which ended on December 31, 2014. In particular, Plaintiff continued to have normal exam findings after the surgery, and Dr. Jody Leonardo indicated that Plaintiff had "100% resolution in terms of her posterior left lateral thigh pain." T.253. While Plaintiff did have continued discomfort in her anterior thigh, Dr. Leonardo recommended only conservative treatment—a course of physical therapy, and Flexeril for spasms. T.253-54. At her last physical examination during the relevant time period, a December 30, 2014, post-bariatric surgery follow-up, Plaintiff's mobility and gait were within normal limits, she appeared comfortable, and she had no tenderness, swelling or deformity upon review of her musculoskeletal system. T.336.

Here, the ALJ did not misapply the applicable regulations; nor did he mischaracterize the record assessing Plaintiff's subjective complaints. Since "the credibility determination is supported by substantial evidence, the Court may not disrupt the ALJ's findings." *Kessler v. Colvin*, 48 F. Supp.3d 578, 595 (S.D.N.Y. 2014) (citing *Bischof v. Apfel*, 65 F. Supp.2d 140, 147 (E.D.N.Y. 1999)).

**VI. Conclusion**

For the foregoing reasons, the Commissioner's decision is affirmed. Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion for judgment on the pleadings is granted. The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca
_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated: December 19, 2018
Rochester, New York.